IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2005

## STATE OF TENNESSEE v. CHRISTOPHER T. STARNES

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-D-2192    Cheryl Blackburn, Judge**

_____

**No. M2004-02563-CCA-R3-CD - Filed July 19, 2005**

_____

The defendant, Christopher T. Starnes, pled guilty to one count of sexual battery and two counts of attempted aggravated robbery. He was sentenced to an aggregate sentence of ten years with one year to be served in confinement and the balance to be served on intensive probation. Thereafter, the trial court revoked the defendant's probation and ordered him to serve the remainder of his sentence in confinement. On appeal, the defendant challenges the trial court's revocation of his probation. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

David M. Hopkins, Nashville, Tennessee, for the appellant, Christopher T. Starnes.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Rob McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

In August 2003, the defendant pled guilty to one count of sexual battery and two counts of attempted aggravated robbery. He was sentenced to an aggregate sentence of ten years with one year to be served in confinement and the balance to be served on intensive probation. In February 2004, a probation warrant was issued alleging that the defendant violated his probation by failing to meet with his probation supervisor, failing to attend meetings for sex offender treatment, and failing to report a change in employment. In March 2004, the trial court sustained the warrant but placed the defendant back on intensive probation for nine years. In April 2004, two probation warrants were

issued, alleging that the defendant's probation was violated because he was arrested for stalking and had committed technical violations of his probation.

At the probation revocation hearing, Detective Gerald McShepard testified that he investigated the incident of stalking leading up to the arrest of the defendant. Detective McShepard indicated that the stalking victim gave him obscene letters she had received and that he turned them into the property room to be fingerprinted. Detective McShepard stated that the defendant's handwriting sample was obtained and submitted for comparative analysis. When asked by the State if Detective McShepard knew of the results of the handwriting analysis, the defense counsel objected on grounds of hearsay and lack of authentication. A discussion ensued, whereupon it was determined from the report that the defendant's writing sample had not been authenticated or confirmed. The defense counsel also argued that the report was not a certified copy, and there was no evidence that Detective McShepard or the individual conducting the handwriting analysis was an expert in handwriting comparison. Consequently, the trial court sustained the defense counsel's objection to hearsay and lack of authentication.

On cross-examination, Detective McShepard stated that the defendant was identified as a suspect because he was a registered sex offender living in close proximity to the alleged victim. Detective McShepard acknowledged that other than the letters received from the victim, he had no personal knowledge of any evidence of stalking.

James Holder, the defendant's probation officer, testified that the defendant failed to provide a valid permanent address as part of the conditions of his probation. Mr. Holder stated that the defendant, after being reinstated to probation on March 19, 2004, told him that he was living in a car. According to Mr. Holder, the defendant finally provided an address, 2131A Alpine Drive, but when Mr. Holder traveled to the address, he discovered a house that looked abandoned. Mr. Holder also stated that the defendant did not get back into treatment upon being reinstated. According to Mr. Holder, the defendant told him that he could not get back into treatment because he was looking for a job, was injured and could not work, and could not afford to go to treatment. Mr. Holder indicated that the defendant's original probation violation derived from the same issues.

On cross-examination, Mr. Holder stated that he went to verify the defendant's address and the house appeared abandoned. However, when pressed for the specific date, Mr. Holder testified that he could not remember but indicated that he checked the address sometime between April 14th and 27th. When asked by the court, Mr. Holder stated that the defendant later gave him a different address, 2307A Alpine Drive, which was actually a home. However, Mr. Holder indicated that he did not verify this address.

On cross-examination, Mr. Holder admitted that at the time the defendant's probation was reinstated, the defendant did not have a job or a place to live. Mr. Holder conceded that he had filed a probation violation warrant less than one month after the defendant's probation was reinstated, which had given the defendant less than thirty days to get a job, find a place to live, and pay for treatment.

The defendant testified that he began searching for employment as soon as his probation was reinstated and obtained employment two weeks before he was arrested for violating his probation. He stated that he had not yet received a paycheck for working those two weeks. The defendant indicated that his treatment classes cost about $120.00 a month. According to the defendant, he struggled with paying his probation supervision fees and paying for his required treatment. The defendant stated that he went to his treatment classes until he was told by his instructor that he could not attend additional classes without paying for them. The defendant further stated that he wanted to attend the classes and believed them to be a "great benefit" to him. The defendant explained, "It was just the problem with the finances . . . I was going, but I couldn't keep paying for those classes."

The defendant testified that he believed that there was a miscommunication regarding the Alpine address he gave Mr. Holder. Although the defendant could not remember the numbering of the Alpine address, the defendant stated that he believed that Mr. Holder must have written down the wrong address on Alpine. The defendant also stated that he was living on Alpine street and this address was given to all his employment prospects.

When questioned by the court, the defendant acknowledged he had violated his probation a second time on the same issues. However, the defendant insisted that the problems arose because of miscommunication with his probation officer and lack of finances.

Regarding the stalking charge, the defendant testified that he was not the person stalking the victim. According to the defendant, his fiancée lived in the apartment by the victim. He stated:

> I have no interactions with this lady. I've seen her because she lived downstairs, but she also seen me with my [fiancée]. I did not write and I'll put this on the Bible in front of God, I did not write that letter, and I had no knowledge of it, and she also stated that she did not see or had knowledge on who wrote the letter . . . from my understanding of the paperwork, that she also pressed charges on someone who lived upstairs across the hall . . . the police officer, when they did the report, they had a photo lineup of me, and she said that was not me who was in the . . . situation.

Following closing remarks by the State and the defense counsel, the trial court stated that it heard the proof in the case and was not going to consider the stalking situation. However, the trial court considered the other probation violations, stating that:

> Mr. Holder testified about the fact that he had been placed back on probation. He had no place to live. He was talking about living in a car or whatever, goes to an address which Mr. Starnes gives him and it is an abandoned house. He didn't get back into treatment. If this were the first time through the pipeline, we would do it again. We would probably just restart him, but this is the second time. I just find that the State has carried its burden of proof, which is by preponderance of evidence. It is the second violation. Mr. Starnes, I'm going to place your sentences into effect.

## II. Analysis

On appeal, the defendant argues that the trial court abused its discretion in revoking his probation. Specifically, he argues that the evidence shows that his probation officer sought a violation warrant against him less than thirty days after he was released from custody and reinstated to probation. According to the defendant, thirty days is not a reasonable amount of time to expect someone just released from incarceration to obtain employment, receive money for labor, and pay for housing, treatment and probation supervision. The defendant also argues that he testified that he did attend three treatment classes and was living where he told his probation officer he would be living. The defendant asserts that he made progress despite the daunting conditions. Accordingly, the defendant contends that the trial court was without sufficient evidence to make a "conscientious and intelligent judgment" in revoking his probation.

Initially, we note that the decision to revoke probation lies in the sound discretion of the trial court. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). The trial court may revoke probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his or her probation. See Tenn. Code Ann. §§ 40-35-310,-311(e); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. Id. If the trial judge has exercised "conscientious judgment in making the decision rather than acting arbitrarily," then there is no abuse of discretion. Leach, 914 S.W.2d at 107. Discretion is abused only if the record contains no substantial evidence to support the trial court's conclusion that a violation has occurred. Harkins, 811 S.W.2d at 82; State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997).

As previously stated, we do not decide the matter as if we were the trial court. Instead, we review the record to determine whether the trial court abused its discretion by revoking probation. Upon review, the record reflects that the defendant, upon violating his probation for the first time, was given a second chance at probation. At the sentencing hearing, the defendant's probation officer testified that the defendant had violated two conditions of his probation – he failed to attend treatment classes and did not provide a correct address. The defendant acknowledged that he stopped attending the classes. The defendant's probation officer also testified that he did not receive a valid permanent address from the defendant. Although the defendant disputed this contention, it is important to note that the defendant did not provide the trial court with any letters, employment applications, or other evidence in an effort to verify his address and support his testimony that the alleged probation violation was a miscommunication. After hearing the testimony, the trial court found by a preponderance of evidence that the defendant's probation was violated when he failed to attend treatment classes and did not provide a correct address to his probation officer. In making this finding, the trial court apparently accredited the testimony of the defendant's probation officer. In addition, the trial court found that the defendant had violated his probation for the second time. Looking at the record, there exists substantial evidence to support the trial court's determination, revoking the defendant's probation.

## III. Conclusion

-4-

The judgment of the trial court is affirmed.

_____
J.C. McLIN, JUDGE